Levi Rosenbaum

1639 E Chelsea Ln Gilbert, AZ 85295

[levirosenbaum@gmail.com](mailto:levirosenbaum@gmail.com)

Pro se'

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

Levi Rosenbaum,                                                                                              No. CV-22-02072-PHX-JAT

        Plaintiff,

v.

Bank of America, NA, Sedgwick Claims Management Services, MetLife Services and Solution,

        Defendants.

        PLAINTIFFS AMENDED COMPLAINT

Defendants would simply dismiss deep seated illegal unfair practices and it is important not to dismiss any party or claim or they continue illegal practices if not brought to stand at this time. My utilities were again shut off this week, my little ones eating ramen, lost my car, and my home is nearing foreclosure because of these wrongs and the benefits being denied.

A person such as plaintiff with disabilities and injured from long standing discrimination and harassment and has symptoms develop that make it difficult to work, is protected by law to make and receive disability accommodations requests, and 2 to take leave without threat of losing job while getting the health treatment and diagnosis (FMLA) and 3 to receive paid benefits that were promised by management of Bank of America, and if that falls through, paid by Insurance that covered Plaintiff by Sedgwick and MetLife. None of these fail safes came through but were denied him. Worse, plaintiff suffered retaliation by BAC. BAC Sedgwick and MetLife fraudulently did the opposite of these things, injuring plaintiff. Plaintiff answers defendants and states claims clearly that are to be answered by payment back of: lost wages (BAC, SEDGWICK), disability insurance coverage retroactive and forward (METLIFE), and punitive damages (BAC) for pain and suffering and to require bank of America to make changes in its fraudulent illegal hiring promoting culture and practices.

BANK OF AMERICA BAC: Plaintiffs disability and BAC's discrimination against his disability by stopping needed benefits and forcing him on leave are not discrete events but was a pattern of ongoing harassment and unfair discrimination. This behavior of ongoing harassment went on for years and retaliation for voicing concerns has no statute of limitations per EEOC. Plaintiff has protections against retaliation for his whistleblowing against illegal hiring and promotion practices by bac. BAC did not deny claims of illegal hiring and promoting practices of extended repeated discrimination to the point of harassment because of its severity and length of time. Senior management of Bank of America continued its multi-year discriminatory practices and its harassment as Plaintiff increased his complaint and as such these are not isolated incidents and are not time barred.

Defendants spent pages attempting to void what they are contractually obligated to pay. Bank and Insurance companies love to take and refuse to give back even when contractually obligated to administer relief and benefits and that is fraud.

BAC accelerated Plaintiffs failing health by discriminating against plaintiff. Plaintiff complained of harassment but it increased and disability became evident from all the stress. BAC did not promote Plaintiff as they had advertised job mobility. Instead, BAC continued unfair promotions and violated rights of plaintiff disabilities and expected him to stay stagnant in that role for the duration of his career.

Civil rights apply to males over 40 too, they at times are disenfranchised. Plaintiff was harassed and when voiced he expected hi whistleblowing to be covered and safe but instead, he was silenced and placed on leave by force after bank of America management removed his accommodations for his disabilities. His job was lost by retaliation while seeking help and after expressing the harassment and discrimination had gone on unresolved. These expectations were not unreasonable and cannot go dismissed because they are covered by FMLA and whistleblower protections and Title VII civil rights acts.

SEDGWICK:   Rushed to deny plaintiffs appeal and then altogether stopped corresponding after plaintiff shared concerns of Sedgwick without permission shared with 2 doctors his health information. Without Sedgwick responding to plaintiff's emails for clarification and subsequent doctors notes this jeopardized plaintiff making impossible for plaintiff to maintain a leave of absence on good standing and to know if his appeal was being worked on by Sedgwick and if short term disability was being ignored what needed to be done for long term disability. How should plaintiff handle things when they stopped communicating? Did they further expect plaintiff to send protected doctors health notes to his employment managers? Sedgwick failed its administrative leave duty by fraud and neglect out of fear or reprisal for HPAA claims at the time which plaintiff removed at the request of the judge and only here mentioned for context.

METLIFE: MetLife and Bank of America appeared to coordinate together to fire plaintiff just before the year of being on leave and by so doing disqualifying him for filing for long term disability benefits. That coordination was fraud and retaliatory against plaintiffs' whistleblowing of illegal hiring and promoting and the harassment.

Breaking protocols rushing to close the short-term disability with a denial- MetLife fraudulently put plaintiff in a less likely position to be approved for its long-term disability plan. 2 months is insufficient time to reject a claim or even enough time to get a referral to see a specialist neurologist to find out what is going on. MetLife did not take enough time and to obtain doctors notes and approve his short term and assist with filing of long-term disability. MetLife neglected to administer benefits. Plaintiff was about to become eligible for long-term disability coverage claims that were needed but instead of assisting him with the claim just before the claim could be made before the year, they fired plaintiff. It appears MetLife's and bank of Americas worker coordinated this firing right before the year mark on purpose to make plaintiffs long term disability claim impossible. The cascading problems of bills piled up and insurance cancelled put plaintiff in a horrible position.

CONCLUDE:

The cause of the forced leave of absence is essential and must not be removed from claims. The forced leave of absence was to silence Plaintiff for his increase complaints of ongoing unfair hiring and promoting practices. This is the same cause of the wrongful termination which is discrimination of disability, ongoing harassment, and retaliation for complaints of illegal hiring and promotion practices.

Bank Of America should have given a paid leave based on Culvers promise and induced leave of absence by removing needed accommodations, but instead Senior management wanted him out and forced him on leave without the promised workman's compensation and ignoring him thus forced him to make FMLA claims instead of giving him the paid leave that was promised by Culver.

Sedgwick and MetLife, each had their own faults both fraudulently willfully denying the insurance contracts as administrators. Both guilty of errors and omissions and negligence and fraud by closing the case rapidly, and denying and closing the appeal without gathering the appropriate medical documents. This put plaintiff in a position where he did not have income, insurance, and the healthcare he needed, and his health declined rapidly.

Plaintiff clearly stated the claim which relief can be granted. Bank of America owes lost wages and punitive suffering damages. Sedgwick and MetLife insurance owe plaintiff back pay of money for tort breach of contract of insurance coverage. Plaintiff seeks remedy in terms of loss of wages, lost leave benefits, and punitive damages for retaliation by Bank of America and for their unfair hiring and promoting be overhauled.

Plaintiff makes clarification as requested. Plaintiff offers the requirements asked for in 4 sections. Section 1 Claims Separated and how each defendant is implicated by plaintiffs' allegations in parentheses. Section 2 Factual Allegations. Section 3 a more detailed statement as to the basis of Plaintiff's retaliation claim, including under which state or federal statute or constitutional law Plaintiff seeks relief. Section 4 Relief demanded Plaintiff emailed Defendants requesting dates Sedgwick and MetLife were employed by BAC to provide insurance and leave coverage because of the overlap while they changed providers. Defendants' response is in #25.

**Section 1 CLAIMS**

Bank of America   Claims 1-6 are alleged against Plaintiffs former employer Bank of America (numbered factual allegations that support it)

Claim 1 Wrongful Termination based on discrimination and plaintiffs' complaints of discrimination and disability (1, 10,29,30,31, see also section 3)

Claim 2 Retaliation: including Retaliation Firing, Retaliation Leave and Fraud unpaid compensation during Leave, Fraud advertising job mobility, and Retaliation removal of disability accommodation breaks. Retaliation denial of benefits, Retaliation closure of financial accounts, (12, 13, 15-19, 20, 21, 24, 29,30-36, see also section 3)

Claim 3 Discrimination based on Disability (8,12,13,16-19,29-31,34-40)

Claim 4 Discrimination based on Religion (11,12,34)

Claim 5 Discrimination based on age and gender (1-6,34)

Claim 6 Unfair hiring and promotion practices (1-11,14-16,32-40)

Claim 7 Fraud on hiring website page specifically advertises stating great place to work with hiring and promoting with job mobility which mobility they denied plaintiff 6 years. (3-6)


MetLife   Claims 7-8 are alleged against Bank of America's former leave administrator MetLife)

Claim 7 Fraud and Negligence and Omission (26)

Claim 8 Wrongful denial of leave benefits short and long term (21-30,35)

Claim 9 Failure to consider evidence of limitations claimant submitted (26-30)


Sedgwick Claims 9-10 are alleged against Sedgwick Bank of America's leave administrator

Claim 10 Fraud and Negligence and Omission (27- 30)

Claim 11 Failure to consider evidence of limitations claimant submitted (26-30)

Claim 12 Wrongful denial of leave benefits (21-30,35)


**SECTION 2 Appropriate factual detail to support the assertion**

Factual Allegations

1) Plaintiff worked for Bank of America BAC May 2015 – Jan 2022.

2) Before plaintiff accepted employment with Bank of America, BAC fraudulently raised plaintiffs' expectations through claims they advertise that working for Bank of America provides employees job mobility, and job training and career progression. These claims only rang true for

favored certain classes (women and younger generations) but not to plaintiff in disfavored classes of being too old over 40, religious beliefs, and male.
Pictures on BAC's hiring employment webpage emphasize woman management, showing women hiring a woman over another man and favoring women in promotions, selection, and job progression. This breaks EEOC laws. Management took promotions mainly for themselves and giving mobility to their favored classes. Plaintiff was placed in a role by manager discretion opening accounts.

3) Plaintiff was hired with very high credentials, a master's degree MBA, and securities and insurance licenses. He achieved top performer award for several months. Plaintiff by merit should have been able to move forward in his career and posted to other positions but was unable to get any job promotion. His female colleague friend gave referrals to help him get promotions for several years but stated that when hiring comes down to two candidate's male and female the practice by BAC is to promote the female as that is the safest choice to promote the woman. This same friend had career progression was promoted to office manager herself and told plaintiff that his division Merrill Edge was where BAC hired and promoted based on diversity requirements which focused more on women at EDGE being that Merrill Lynch had more male representation. She used women's leadership associations and clubs to help her with promotions which BAC sponsored but which were not afforded to Plaintiff. Plaintiff volunteered often did park clean up service however he was unable to find the same promotion assisting clubs get any mobility. Plaintiff hired based on the expectation of the advertised job mobility see (https://careers.bankofamerica.com/en-us/benefits) but found this claim of job mobility is fraud and BAC only gave mobility to certain genders and ages races and religions and were denied him illegally against EEOC fair hiring and promoting and civil rights VII acts. May 2015 – Jan 2022.

4) Plaintiff watched other peers and managers enjoy job promotion mobility each 6 months or yearly. In one job opportunity, a female colleague got the job instead of plaintiff who had all the required securities licenses needed while she had none. In 2020- 2022 plaintiff trained a different female colleague friend then promoted over plaintiff after training. The ongoing culture of illegal hiring and promoting disenfranchised Plaintiff.

5) Plaintiff notified management of unfair hiring and promotion practiced by managers who enjoyed the most job mobility among themselves. Job rotation and promotion occurred at a 10 to 1 higher efficiency among managerial staff and their friends compared to plaintiff. This "inefficiency" lasted 2015 through 2022 and resulted with firing- despite protections over plaintiff for disclosing illegal activity. Plaintiff explained from this unequal treatment, males over 40 were denied due promotions and for 6 years any promotion whatsoever in plaintiffs' case and workers that were not in the favored classes were caged to the same job and doomed to be among the attrition rate and just quit or expected to stay in the basement until they quit. Senior management in meeting discussed those that are not diversity equity inclusion (DEI) honored as a group- will quit and they knew the attrition rates. With that BAC continually hires younger DEI approved new employees fitting their favored classes. BAC honored these classes by hiring and promoting them, but at the expense of denying due promotion to plaintiff. BAC upper

management took offense during meetings as plaintiff claimed civil rights applied to him but were unfairly violated.

6) BAC has a mentorship program advertised on their web page. Plaintiff made effort to seek mentorships of those in managerial roles to help him have job mobility but he received no response. Plaintiff sought a QA role under David Sorenson and was interviewed 3 times within 3 years but younger female received the promotion. David ignored Plaintiffs emailed request to assist with him in a mentorship way. Several female colleagues' friends of Plaintiff suggested mentorships to him because they were granted mentorships by management that led to job promotions.

7) 2019 -2022 Plaintiff began managerial disability accommodations for gastrointestinal bleeding anxiety and depression symptoms. An accommodation was given the key to the health room to deal with daily symptoms.   2021-2022 Plaintiff suffered with symptoms of speech difficulty memory issues and greater digestion problems which demanded increased breaks and time off. Parkinsons disease was diagnosed after the leave began which disability required the accommodations during employment.

8) In 2019 Plaintiff experienced disability discrimination when his manager Stark saw plaintiff go to the restroom and screamed at him to come back to take calls- humiliating him and triggering cortisol and blood thinning increasing gastrointestinal bleeding depression and anxiety. Violating ADA Title I. Plaintiff complained and nothing done but an intent to silence plaintiff became evident as they promoted his manager out quickly after the incident.

9) Plaintiffs' humiliation manifested in physical illnesses being left behind yearly seeing new teammates and 10 new managers rotate and come and go while plaintiff was held back like a third-grader who belonged in high school but was held back – watching those less-qualified move up.

10) Bank of America continued to unfairly rotate managers yearly violating EEOC laws. Plaintiff complained he had 10 managers with unfair job mobility at the expense of plaintiff. Each manager moved out of the role being promoted before helping plaintiff realize any job mobility. Each manager heard plaintiff complain privately and publicly at meetings his concern of the EEOC violations of fair hiring and promoting.

11) 2019-2022 Plaintiff was discriminated on religion and harassed ongoingly by Bank of America. Plaintiff asked why he has not been promoted and for her help to get promoted. Plaintiffs' manager harassed him saying that she knew of plaintiff's religion and disagrees strongly with it and that they do not see eye to eye.  She stated this for several months until Plaintiff realized BAC management team made it clear he religiously did not fit in and that was the cause of the long-standing failure to promote him problem.  Plaintiff did not forsake his faith and management continued to deny him promotion for the duration of his career- this was not

isolated harassment it endured. Upper management supported the discrimination and discrimination reason for the duration of his employment by refusing to promote him and instead promoted his harassing manager.

12) In 10/16/2020 Karla Buttler retaliated against Plaintiff for his complaints of her discrimination by forcing him to stay late and instant messaged him past his scheduled work time making him late to pick up plaintiffs' children from school. She threatened discipline with yelling tones accused him of lying. Plaintiff did not sleep that weekend and suffered trauma because of it which for months did not leave him.

13) From 2020 -2022 Plaintiff developed speech, breathing, anxiety, digestion, and other difficulties making it hard for him to interact in the client facing role had isolated him to for 5 years. Bank of America did not assist him at his request for alleviating his disability by removing him from client facing roles. BAC denied needed disability accommodation to find a better role suited for his disabilities violating Section 503 of the Rehabilitation Act of 1973. Violating ADA Title I.

14) In Dec 2020 Jeff Brown Plaintiffs 9th manager heard plaintiff's alleging of discrimination and unfair hiring and promotion and agreed it was violating EEOC fair promotion laws and arranged a skip level meeting with Senior manager Shawana Culver.

15) Dec 2020 - March 2021 Plaintiff, manager Jeff Brown and senior manager Shawana Culver met late December 2020 to early January 2021. Plaintiff detailed concerns of violations of unfair hiring and promotion practices and ongoing discrimination to his management team.

16) Mrs. Culver treated with impunity Plaintiff's complaints of discrimination stating she was offended by the complaint (suggesting to plaintiff the civil rights act should not apply for males over 40). She acknowledged unfair hiring and promotion practices causing Petitioner being stagnant as an inefficiency. (Meaning there is systematic discrimination at BAC as well as willful discrimination). The complaints should have been sent upwards and to have been made right however there was no follow-up for the discrimination and unfair hiring and promotion practices. She told plaintiff he should take a leave and qualified for it.

17) Serena Culver promoted into manager role over Plaintiff at the same time as this meeting occurred. She accommodated Plaintiff with some added disability time and breaks.

18) Within a few weeks after Plaintiffs upper management complaint meeting, Serena sent instant messages to plaintiff removing already granted accommodation breaks saying she received notice that she was not able to continue granting the disability breaks and that it came upper management. Serena Crawfords upper manager at the time was Shawana Culver the same Plaintiff complained to. Violation Section 503 of the Rehabilitation Act of 1973. Violating ADA Title I.

19) When Serena stated BAC upper management decided to remove disability accommodation breaks that humiliated Plaintiff and forced him to go on leave which he did. Plaintiff closed shop and went on leave March 15 believing Culvers statement that he qualified for paid benefits on this leave.

20) Bank of America disabled plaintiff's work station access and told him and to go through MetLife and shortly thereafter Sedgwick to obtain paid benefits. Plaintiff was cut off from communications with senior management that had forced his leave. Without that plaintiff was unable to obtain promised paid leave benefits.

21) BAC was contractually obligated in Arizona to provide plaintiff benefits of: workman's comp, and administrative paid leave benefits. FMLA ERISA Laws.

22) BAC used MetLife from 2015 to Summer 2021 as short-term and long-term benefits leave administrator and insurance for leave coverage. FMLA ERISA Laws.

23) MetLife continues to be long-term benefits administrator. Sedgwick replaced MetLife approximately June 2021 as short-term leave benefits administrator. FMLA ERISA Laws.

24) Plaintiff was contractually entitled to 3 types of Leave benefits and payments:
    1 Short term leave benefits of insurance benefits and salary at 100% (duration for I believe up to one year paid by Sedgwick and MetLife)
    2 Long term disability benefits of insurance benefits and salary at 70% of salary (duration 1 year and beyond paid by MetLife) and
    3 Managerial requested administrative leave: benefits of insurance benefits and salary at 100% paid by Bank of America. (Because it was requested by senior management)

25) Defendant MetLife began as Insurer and leave administrator but was being replaced by Sedgwick on or about spring 2021.
    1) The date Sedwick began leave administration duties for Bank of America per Defendants is May 3, 2021.
    2) The date MetLife ended leave administration duties for Bank of America per Defendants is May 3, 2021.
    3) MetLife and Bank of America started Plaintiffs leave per Defendant: approved by MetLife for unpaid BofA medical /FMLA leave starting on March 16, 2021. That approved leave ended on May 8, 2021. Bank of America stated they approved a leave without benefits then claim later he was on unapproved leave and fired him while ignoring subsequent doctors' notes.

26) MetLife owed a duty of care to assist plaintiff to receive paid benefits but denied disability short term benefits payment and coverage in a rushed manner. MetLife within a month and a half denied, closed the claim, and handed it off to Sedgwick as soon as they could before it could be handled properly.

27) Defendant Sedgwick took over leave administration approximately spring summer 2021 and owed a duty of care to assist plaintiff to receive paid benefits.

28) Sedgwick did not assist plaintiff but denied it based on MetLife's botched job and rushed to denial.

29) May 31st 2021 – Jan 2022 Plaintiff appealed to BAC and Sedgwick for benefits promised him but again denied plaintiff pay and insurance cancelled which dropped Plaintiff from Teladoc services he was receiving; delaying needed medical care. Bank of America stated Plaintiff would need to sue for relief. Plaintiff first did exhaust administrative remedies by complying with the plan's internal claim procedure before filing a lawsuit. The Bank and Sedgwick both told him he would have no remedy but to sue fulfilled plaintiff's requirement to exhaust administrative remedies by complying with the plan's internal claim procedure before filing a lawsuit. August 31 BAC Yatu Davis demanded doctors' notes or firing. Plaintiff explained that Sedgwick stopped responding or acknowledging receiving Plaintiffs latest doctors' notes after complaints of Sedgwick sharing his doctors notes unauthorized with 2 other doctors.
Plaintiff sent BAC unresolved complaints of discrimination, from then they decided to fire plaintiff which is unlawful due to it being retaliation for plaintiffs' complaints of discrimination and unfair illegal hiring and promoting.

30) September 2021 -Jan 2022 Plaintiff sent updated doctors notes via email in effort to receive promised benefits but Sedgwick stopped communicating with Plaintiff and did not respond. Sedgwick neglected plaintiff help necessary to get benefits enacted. Sedgwick's received updated Doctors note but did not respond. By willful neglect Sedgwick abandoned Plaintiff helpless to maintain an approved leave. Long-term disability coverage was cancelled due to their neglect.

31) October 2021 – Jan 2022 Bank of America was sent written complaints by plaintiff detailing the unresolved issues and discrimination and appealed but BAC responded plaintiff has exhausted the administrative appeal process and thus must sue for benefits. Jan 13 2022 after receiving plaintiffs' complaint, Plaintiff was sent a termination letter without eligibility for rehire. Plaintiffs colleague friend also left the company near the same time but she was given the option for rehire.

32) Plaintiff filed for EEOC to make complaint that he was suffered ongoing discriminated and harassment and was terminated by retaliation.

33) June 2022 Bank of America fraudulently sues plaintiff and closes his accounts after refusing owed benefits to him.

34) EEOC agreed with right to sue in fall 2022.

35) Feb 3rd 2021 Plaintiff appealed to his former employe. Plaintiffs' physical health declined further by extended civil rights violations. His symptoms led to a diagnosis of Parkinsons Disease. He was delayed treatment having to wait to be put on State insurance. Plaintiff's health collapsed while MetLife and Sedgwick denied benefits without care.

36) Plaintiff attributes much of his failing health to injuries from being retaliated and discriminated against by Bank of Americas willful disregard to plaintiff's civil rights.

37) Plaintiff is pending social security disability approval because of the denial of work benefits that were needed. Plaintiff has suffered because of the adverse actions and retaliation of Bank of America.

38) On January 13, 2022, the Bank terminated Plaintiff after ignoring written complaints of discrimination.

39) On August 1, 2022, Plaintiff filed a charge of discrimination (the "Charge") with the Equal Employment Opportunity Commission ("EEOC").

40) On December 8, 2022, Plaintiff filed his Complaint.

**Section 3 Retaliation Clarified**

    10.10 Civil Rights—Title VII—"Adverse Employment Action" in Retaliation Cases Actions such as firing and demoting are adverse employment actions for purposes of a retaliation claim. Removing needed accommodation for plaintiff's disability at time of complaints to management and Plaintiffs manager stating it came from upper management at the approximate time of Plaintiff meeting with senior management to make complaints of discrimination-gives cause to claim retaliatory adverse employment action because it proximately is tied to Plaintiffs complaint at that meeting.

Employee Plaintiff had protection under these laws and statutes below specifically tied to his bringing to attention the unfair hiring and promotion and discrimination practices to his senior manager.  He thought it to be handled by Bank of America's management team but it was not. Instead, BAC answered with a series of adverse actions persecuting Plaintiff.  Shawana Culver never resolved the complaint but sought to bury it and shut up the voice of Plaintiff and did so by telling Plaintiff take a leave and that he qualified for it. Next within a very short time of weeks Bank of America spurred Plaintiffs leave by removing already granted disability breaks that Plaintiff relied on.

After pushing plaintiff on leave he was cut off from insurance, leave pay, and soon was being threatened that he would be terminated without rehire eligibility.

 Bank of Ameria fired plaintiff close in proximity of time to discrimination complaints while refusing benefits. 1) compelled leave and 2) termination and 3) removal of needed ADA disability break time plaintiff needed are all connected and tied to the time of Plaintiffs upper management meeting where

he disclosed concerns that Plaintiff's employer was involved in direct violation of federal and Arizona Statute and constitutional protections.  He asserts claims of retaliation because his concerns were met with adverse actions. Plaintiff demands relief for these violations which caused suffering and damages to the life of Plaintiff.

> **BANK OF AMERICA violated:**
> - **Adverse employment actions take many forms.  *See, e.g.*,  *Dahlia v. Rodriguez*, 735 F.3d 1060, 1078 (9th Cir. 2013) (en banc) (considering employee's placement on administrative leave, deprivation of ability to take promotional exam, and loss of pay and opportunities for investigative or other job experience);  *Passantino v. Johnson & Johnson Consumer Prods., Inc.*, 212 F.3d 493, 500-01, 506 (9th Cir. 2000) (considering low rating on job performance review, decreased job responsibilities, and failure to receive promotions);  *Miller v. Fairchild Indus., Inc.*, 885 F.2d 498, 505 (9th Cir. 1989) (discussing layoff); *Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987) (considering transfer of job duties and "undeserved" performance ratings); *Ruggles v. Cal. Poly. State Univ.*, 797 F.2d 782, 785 (9th Cir. 1986) (discussing failure to hire); *E.E.O.C. v. Crown Zellerbach Corp.*, 720 F.2d 1008, 1012 (9th Cir. 1983) (discussing four-month disciplinary suspension). An employee may not be discharged in retaliation for refusing to commit an act that would violate state law. {CITE: Ariz. Rev. Stat. § 23-1501(3)(c)(i).}**
> - **Arizona Employment Protection Act (includes Whistleblower Protection): The Arizona Employment Protection Act (AEPA) is the exclusive remedy for wrongful discharge claims.**
> - ***Whistleblower Protection:* An employee may not be discharged in retaliation for disclosing that he has information (or a reasonable belief) that the employer has violated, is violating, or will violate an Arizona statute or constitutional provision. To be protected, this disclosure must be made in a reasonable manner. Also, this disclosure is protected only if made either to the employer (or to a representative of the employer who the employee reasonably believes has the authority to take action) or to a public entity such as a state agency. Notably, disclosures made to media outlets are not protected by the statute. CITE: Ariz. Rev. Stat. § 23-1501(3)(c)(ii).**
>
> - **Discrimination: An employee may not be discharged (or discriminated against) for opposing a discriminatory employment practice. Nor may an employee be discharged (or discriminated against) in retaliation for making a charge, testifying, assisting, or participating in an investigation, proceeding, or hearing under Arizona's civil rights laws. These laws prohibit discrimination on the basis of race, color, religion, sex, age, disability and national origin. Ariz. Rev. Stat. § 41-1464.**
> - **Citation The following is the text of Title VII of the Civil Rights Act of 1964 (Pub. L. 88-352) (Title VII), as amended, as it appears in volume 42 of the United States Code, beginning at section 2000e. Title VII prohibits employment discrimination based on race, color, religion, sex and national origin. The Civil Rights Act of 1991 (Pub. L. 102-166) (CRA) and the Lily Ledbetter Fair Pay Act of 2009 (Pub. L. 111-2) amend several sections of Title VII. In addition, section 102 of the CRA (which is printed elsewhere in this publication) amends the Revised Statutes by adding a new section following section 1977 (42 U.S.C. 1981), to provide for the recovery of**

- **compensatory and punitive damages in cases of intentional violations of Title VII, the Americans with Disabilities Act of 1990, and section 501 of the Rehabilitation Act of 1973.**

- **Executive Order 11246 - Executive Order 11246 requires affirmative action and prohibits federal contractors from discriminating on the basis of race, color, religion, sex, sexual orientation, gender identity, or national origin. Contractors also are prohibited from discriminating against applicants or employees because they inquire about, discuss, or disclose their compensation or that of others, subject to certain limitations.**

- **Section 503 of the Rehabilitation Act - Section 503 of the Rehabilitation Act of 1973 prohibits federal contractors and subcontractors from discriminating in employment against qualified individuals with disabilities and requires employers take affirmative action to recruit, hire, promote, and retain these individuals.**
- ADA Title I.

**SEDGWICK AND METLIFE violated**

- **FMLA and ERISA 502 29 U.S. Code § 1132 - Civil enforcement and Fraud**

### Section 4 Relief Demanded

Bank of America:

1 Defendant Bank of America to pay Plaintiff damages of lost wages from failure to promote, ongoing harassment discrimination, unpaid leave, and retaliation firing.

a) The wages to be recalculated from start of employment 2015 with yearly increases of inflation, missed yearly promotions increases and bonus which were denied him from the discrimination and unfair practices of promotion.

b) Lost wages with same yearly increases from leave of absence to present.

2 Defendant to pay plaintiff compensatory and punitive damages for subsequent worsening of symptoms and disabilities and punitive and compensatory damages for retaliatory firing based on discrimination and whistleblowing and harassment complaints of plaintiff in an amount the court deems commensurate to pain and suffering BAC inflicted on plaintiff.

3 Defendant to pay plaintiff compensatory and punitive damages for suffering emotional and physical for the degrading humiliating experience of being revoked disability accommodation at time of

complaints in an amount the court deems commensurate to compensate for pain and suffering.

4 Right to rehire to a position suitable to plaintiffs' needs down the road.

5 Defendant to pay plaintiffs' attorneys fees after plaintiff obtains counsel.

6 Require bank of America to make changes in its unfair illegal hiring promoting culture and practices.

MetLife:

1 Defendant to pay plaintiff punitive damages for neglect as allowed by law.

2 Defendant reinstate coverage to provide retroactive long term disability payments at start of Fall 2021 to present at 70% of income potential had BAC promoted with fair hiring practices which were due Plaintiff. Long Term disability coverage starting from end of court proceedings forward.

3 Backpay of disability short and long term may be forgone if Bank of America pays 100% lost wages for that time.

Sedgwick:

1 Defendant to pay plaintiff punitive damages for fraud and failure to administrate with neglect as allowed by law.

2 Defendant to provide back pay of lost short-term benefits and pay.

3 Backpay of disability short and long term may be forgone if Bank of America pays 100% lost wages for that time.

If it needs a bit more, please allow for more clarification. My health slows things down for me but this is showing my efforts to meet court requirements for clarification.

Signed, Levi Rosenbaum 12/13/2023