**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Levi Rosenbaum, | No. CV-22-02072-PHX-JAT |
| Plaintiff, | **ORDER** |
| v. | |
| Bank of America, NA, Sedgwick Claims Management Services, and Metropolitan Life Insurance Co., | |
| Defendants. | |

Pending before the Court is Defendants' Motions to Dismiss (the "Motions"). Plaintiff filed a Response to the Motions. Defendants filed a Reply. The Court now rules on the Motions.

## I.     BACKGROUND

In May 2015, Bank of America ("BoA") hired Levi Rosenbaum ("Plaintiff"). (Doc. 65 p. 3). Plaintiff started a leave of absence on March 15, 2021. (Doc. 65 p. 8). Shortly thereafter, Plaintiff filed a claim for short-term disability benefits that was then denied by BoA's short-term disability claim administrator, Metropolitan Life Insurance Company ("MetLife"). (Doc. 65 p. 9). On May 3, 2021, Sedgwick Claims Management Services, Inc. ("Sedgwick") replaced MetLife for the administration of short-term disability benefits only. (Doc. 65 p. 9; Doc. 77 p. 4). MetLife remained the claim administrator for long-term disability benefits. (Doc. 77 p. 4). Plaintiff appealed MetLife's decision to deny his short-term disability benefits claim to Sedgwick. (Doc. 65 p. 10). Plaintiff continued through the

appeals process until BoA told him that Sedgwick "upheld the denial" on the appeal "due to no additional supporting documentation being received" and that the "next step would be to file a civil suit against Sedgwick." (Doc. 65 p. 10-12). On January 13, 2022, BoA terminated Plaintiff. (Doc. 65 p. 12).

In June 2022, BoA closed Plaintiff's financial accounts and filed a lawsuit against Plaintiff for $30,000 in credit card debt. (Doc. 65 p. 13). On August 1, 2022, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). (Doc. 65 p. 12-13). On March 29, 2024, Social Security approved Plaintiff's disability status to March 9, 2021. (Doc. 65 p. 13).

On September 23, 2022, the EEOC issued a "Notice of Right to Sue" letter to Plaintiff in connection to his August 1, 2022 charge. (Doc. 65 p. 12-13). On December 8, 2022, Plaintiff filed a complaint in the District Court. (Doc. 2). The complaint was subsequently amended three times: on November 14, 2023; then on December 15, 2023; and, most recently, on June 7, 2024. (Doc. 29, 33, 65). Plaintiff's Third Amended Complaint ("TAC") is before the Court now.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) requires a complaint to contain, among other things, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). A defendant can test if a plaintiff has met the requirements of Rule 8(a) by filing a motion to dismiss for "failure to state a claim on which relief can be granted" under Rule 12(b)(6).

To decide a 12(b)(6) motion, the Court generally focuses on what the plaintiff has written in the complaint. 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure § 1357* (3d ed. 2004 & Supp. 2022). This is because a Court usually cannot consider anything outside the complaint without transforming the motion to dismiss into a motion for summary judgment under Federal Rule of Civil Procedure 56. There are two recognized exceptions, however, in which a court may consider evidence otherwise outside of the complaint without converting the motion: (1) evidence that the court has judicially

noticed, and (2) evidence incorporated, either literally or by reference, into the plaintiff's complaint. *Lee v. City of L.A.*, 250 F. 3d 668, 688–89 (9th Cir. 2001); *see also* Section III.B, *infra*.

In deciding whether a complaint will survive a 12(b)(6) motion, the Court does not need to accept a complaint's legal conclusions, but it does accept as true all the complaint's factual allegations, i.e., the plaintiff's factual description of what happened. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Additionally, the Court must interpret the complaint's allegations "in the light most favorable to the plaintiff." *Schwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000). However, "the court need not accept as true allegations that contradict facts which may be judicially noticed." *Westlands Water Dist. v. U.S., Dept. of Interior, Bureau of Reclamation*, 805 F. Supp. 1503, 1506 (E.D. Cal. 1992) (citing *Mullis v. U.S. Bankruptcy Ct.*, 828 F. 2d 1385, 1388 (9th Cir. 1987)). The Court similarly is not required to accept as true allegations that contradict documents that are incorporated into the complaint. *See Spinedex Physical Therapy USA, Inc. v. United Healthcare of Ariz., Inc.*, 661 F. Supp. 2d 1076, 1083 (D. Ariz. 2009).

A complaint will be dismissed for failure to state a claim if it lacks either "a cognizable legal theory or . . . sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). To allege sufficient facts under a cognizable legal theory, a complaint must contain factual allegations from which the court can reasonably conclude that the plaintiff is not just possibly entitled to relief, but plausibly entitled to relief. *See Iqbal*, 556 U.S. at 678.

## III.    ANALYSIS

### a.  Plaintiff's claims 1 through 7 against Defendant BoA

Plaintiff alleges Claims 1-7 against Defendant BoA. BoA, in part, argues that Plaintiff's claims are time-barred because they occurred over 300 days before Plaintiff filed his charge with the EEOC on August 1, 2022. In response, Plaintiff argues that acts that occurred prior to the cut-off date are timely because they are part of an "ongoing

harassment" claim.

"Title VII contains several distinct filing requirements which a claimant must comply with in bringing a civil action." *Valenzuela v. Kraft, Inc.*, 801 F.2d 1170, 1172 (9th Cir. 1986), *as amended by* 815 F.2d 570 (9th Cir. 1987). Before filing a civil suit under Title VII, a plaintiff "must file a charge within the statutory time period and serve notice upon the person against whom the charge is made." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002) (citing 42 U.S.C. § 12117(a)). When a plaintiff files a charge with the EEOC and a state or local agency, the plaintiff must file with the EEOC "within three hundred days after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e–5(e)(1) (2009).

In determining whether a plaintiff timely filed a case, courts have distinguished between "discrete discriminatory acts" and acts contributing to a "hostile work environment." *Morgan*, 536 U.S. at 109. A discrete discriminatory act consists of conduct that "occurred" on the day it "happened." *Id.* at 110. Some "easy to identify" examples of discrete acts are "termination, failure to promote, denial of transfer, [and] refusal to hire." *Id.* at 114. A plaintiff must file a charge within 300 days of the allegedly discriminatory act. *Id.* at 110. If a plaintiff does not file within this time period, they lose the ability to recover for that act. *Id.*

By contrast, a claim based on a "hostile work environment" "involves repeated conduct" that "occurs over a series of days or . . . years." *Id.* at 115. "In determining whether an actionable hostile work environment claim exists, we look to 'all the circumstances,' including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Id.* at 116. (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)). Under a hostile work environment claim, a court may review conduct that occurred outside the filing period *if* "an act contributing to the claim occur[ed] within the filing period." *Id.* at 117.

Here, Plaintiff filed his charge with the EEOC on August 1, 2022. Any conduct that

occurred over 300 days prior, or before October 5, 2021, is time-barred, *unless* Plaintiff has a claim based on a "hostile work environment."[1] Plaintiff's TAC does not expressly describe the workplace as a "hostile environment." Plaintiff does, however, cite the EEOC website in arguing that the Court should consider incidents preceding October 5, 2021, based on a theory of "ongoing harassment." The EEOC uses the term "ongoing harassment"[2] to refer to the idea that when a plaintiff files their charge "within . . . 300 days of the last incident of harassment," all incidents of harassment will be considered, "even if the earlier incidents happened more than 180/300 days earlier." U.S. Equal Employment Opportunity Commission, *Time Limits For Filing A Charge*, https://perma.cc/3ARZ-6H7W.

Under his theory of "ongoing harassment," Plaintiff specifically asks the Court to "consider all the earlier incidents" based on "the most recent incidents of 1) wrongful termination and 2) discrimination based on disability that occurred right before the forced leave." (Doc. 78 p. 2). First, the allegedly "wrongful termination" occurred within 300 days of August 1, 2022: Plaintiff was terminated on January 13, 2022. The question becomes whether this termination was "an incident of harassment."

Federal law prohibits harassment based on race, color, religion, sex, national origin, disability, genetic information, and age (40 or over). 42 U.S.C. § 2000e-5 (Title VII); 29

---

[1] Contrary to Plaintiff's beliefs, BoA's alleged ignorance of his complaints does not "push" the statute of limitations "further." (Doc. 65 p. 12) Nor is the time period extended by Plaintiff's assertion that "300 days is less statistically significant" or by the EEOC "being very busy." (Doc. 78 pp. 2, 4).

[2] At one time, the Ninth Circuit used the doctrine of "continuing violations" to refer to the same idea: "events occurring outside the limitations period may be considered as a basis for the claim so long as those events are part of an ongoing unlawful employment practice." *Draper v. Coeur Rochester*, 147 F.3d 1104, 1107-08 (9th Cir. 1998). However, after the landmark Supreme Court case *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, (2002), "little remains of the continuing violations doctrine . . . [e]xcept for a limited exception for hostile work environment claims." *Bird v. Dep't of Hum. Servs.*, 935 F.3d 738, 748 (9th Cir. 2019); *see also Cherosky v. Henderson*, 330 F.3d 1243, 1246 (9th Cir. 2003) ("In *Morgan*, however, the Supreme Court substantially limited the notion of continuing violations.").

U.S.C. § 626 (Age Discrimination in Employment Act (ADEA)); 42 U.S.C. § 12117(a) (Americans with Disabilities Act (ADA)); 42 U.S.C. § 2000ff-6(a) (Genetic Information Nondiscrimination Act (GINA)). Plaintiff has not pled sufficient facts to establish that his termination was an incident of harassment. He pled no facts showing any sort of causal link between his termination and a protected class listed above. Because Plaintiff has not pled sufficient facts to show that his termination was an "incident of harassment," the termination cannot be the basis of "ongoing harassment."

Second, the alleged "discrimination based on disability *that occurred right before the forced leave*" by definition occurred prior to March 15, 2021 (the date Plaintiff went on leave). This is therefore time-barred and also cannot form the basis of "ongoing harassment." Because Plaintiff has not pled sufficient facts to establish "ongoing harassment," the Court will not, on the basis of this theory, consider incidents that precede October 5, 2021. However, in "continu[ing] to construe pro se filings liberally," this Court will analyze Plaintiff's claims and consider whether Plaintiff has sufficiently alleged any other claims, including whether Plaintiff alleged conduct during the time period that contributed to a hostile work environment. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). The claims are considered in turn below.

### i.  Claim 1: Retaliation (termination)

Plaintiff's first claim alleges that BoA terminated him in retaliation for his "complaints of discrimination, unfair hiring and promotion practices, and disability" in violation of the Americans with Disabilities Act (ADA) and Title VII of the Civil Rights Act of 1964 (Title VII).

### 1.  Timeliness

BoA terminated Plaintiff on January 13, 2022. The termination is not time-barred. However, most of the facts Plaintiff cites in support of this claim *are* time-barred because they occurred prior to October 5, 2021, with most events occurring before Plaintiff went on leave on March 15, 2021. Although Plaintiff argues that the termination itself is the culmination of "ongoing harassment" and therefore the basis for the Court considering

events outside the statute of limitations, as discussed above, he has not pled sufficient facts to show that the termination was itself an "incident of harassment." *See supra* Section III.a. Additionally, the termination cannot be the basis of a hostile work environment claim because termination is an "easy to identify" example of a discrete act and "hostile environment claims are different in kind from discrete acts [because] [t]heir very nature involves repeated conduct." *Morgan*, 536 U.S. at 114-15. Because the termination itself occurred within the timely period, the Court will consider whether Plaintiff alleged sufficient facts to state a claim.

### 2. Merits

To sufficiently plead a claim of retaliation, a plaintiff must show that (1) they engaged in a protected activity; (2) they suffered an adverse employment action; and (3) there was a causal link between their protected activity and the adverse employment action. *Raad v. Fairbanks N. Star Borough Sch. Dist.*, 323 F.3d 1185, 1197 (9th Cir. 2003). In the retaliation context, an adverse employment action is an action that is "reasonably likely to deter employees from engaging in protected activity." *Vasquez v. Cnty. of Los Angeles*, 349 F.3d 634, 646 (9th Cir. 2003), *as amended* (Jan. 2, 2004). The causation element requires proof of a causal link between a protected activity and the employer's action. *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2533 (2013).

Here, even assuming that Plaintiff has sufficiently pled facts to meet the first two elements, he has not pled facts that show a causal link between the protected activity and his termination. In other words, he has not shown that he was terminated *because of* his "complaints of discrimination, unfair hiring and promotion practices, and disability." In fact, Plaintiff provides an explanation for his termination, writing that BoA stated he "was on unapproved leave and fired him." (Doc. 65 p. 10).

Although the Court may generally grant leave to amend, *sua sponte*, when dismissing a complaint under Rule 12(b)(6), this Court will not grant leave to amend here because further amendment would be futile. *See Bonin v. Calderon*, 59 F.3d 815, 845 (1995) (finding futility alone justifies denying leave to amend). The Court finds that

amendment would be futile for the following reasons: (1) Plaintiff has already had three chances to amend his complaint; (2) each complaint has had the benefit of being adversarially tested; (3) Plaintiff has declined to meet and confer with Defendants (Doc. 73 p. 3-4); and (4) Plaintiff has not alleged any new facts with each amended complaint. Given that Plaintiff is still unable to state a cognizable legal claim, the Court has no reason to believe a fourth amended complaint would yield a different result.

### ii.   Claim 2: Retaliation (other acts)

Plaintiff's second claim alleges that BoA retaliated against Plaintiff for his "complaints of discrimination, unfair hiring and promotion practices, and disability" by (1) removing disability accommodation breaks, (2) forcing leave and not paying compensation during leave, (3) denying benefits, and (4) "closure of financial accounts."

### 1.   Timeliness

As discussed above, by law, the Court may only consider acts that occurred after October 5, 2021. The following events are therefore time-barred:

- On January 8, 2021, Plaintiff went to his manager with "concerns of violations of unfair hiring and promotion practices and ongoing discrimination." (Doc. 65 p. 7).
- Plaintiff's disability accommodation breaks were removed "within a few weeks after Plaintiff's upper management complaint meeting" (which occurred on January 15, 2021). (Doc. 65 p. 7-8).
- Plaintiff alleges that the removal of disability breaks caused him "humiliation" and "forced" him to go on leave on March 15, 2021. (Doc. 65 p. 8).

Even if these incidents together could show a "pattern" of conduct, they are _all_ time-barred. Therefore, these incidents cannot form the basis of an "ongoing harassment" or a "hostile work environment" claim.

Plaintiff also argues that Defendant retaliated by denying him compensation and benefits during his leave. Plaintiff started his leave on March 15, 2021, and it appears that Plaintiff was immediately without pay or benefits. (Doc. 65 p. 8-9) This, too, is time-barred. Plaintiff may have intended to argue that the Court should consider the leave without pay or benefits as timely because it was part of "ongoing harassment" or a "hostile work

environment" that lasted until he was terminated in January 2022.  However, this is not legally plausible.

The "[m]ere continuity of employment [or leave], without more, is insufficient to prolong the life of a cause of action for employment discrimination." *Delaware State College v. Ricks*, 449 U.S. 250, 257 (1980) (finding no continuing violation between decision to deny tenure and actual termination). Similarly, "an employer's rejection of an employee's proposed accommodation . . . does not give rise to a continuing violation." *Cherosky v. Henderson*, 330 F.3d 1243, 1248 (9th Cir. 2003) (*quoting Elmenayer v. ABF Freight Sys., Inc.*, 318 F.3d 130, 134-35 (2d Cir. 2003)). Because the mere continuity of Plaintiff's leave without pay or benefits is insufficient to prolong the life of a cause of action, without more, the Court cannot find an ongoing violation between Plaintiff going on leave and Plaintiff's termination. BoA's rejection of Plaintiff's requests for pay and benefits does not give rise to either "ongoing harassment" or a "hostile work environment."

Finally, Plaintiff claims BoA retaliated against Plaintiff by closing Plaintiff's financial accounts in June 2022. Plaintiff notes that he had $30,000 in credit card debt. This is not time-barred and will be discussed below.

### 2.  Merits

While not time-barred, Plaintiff did not fulfill the required administrative exhaustion charge for this claim. "Allegations . . . not included in the plaintiff's administrative charge may not be considered by a federal court unless the new claims are like or reasonably related to the allegations contained in the EEOC charge." *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1100 (9th Cir. 2002), *as amended* (Feb. 20, 2002) (internal quotations omitted). In determining whether an allegation or claim is "like or reasonably related" to allegations in the EEOC charge, courts "consider such factors as the alleged basis of the discrimination, dates of discriminatory acts specified within the charge, perpetrators of discrimination named in the charge, and any locations at which discrimination is alleged to have occurred." *Id.*

Here, Plaintiff did not include the specific allegation that BoA sued him "in retaliation" in his EEOC charge.[3] (Doc. 1 15-16).  Plaintiff did write that he was "retaliated against for requesting an accommodation," but did not elaborate further. Plaintiff also indicated that the "latest" date discrimination(s) took place was January 13, 2022 (the day Plaintiff was terminated). BoA sued Plaintiff in June 2022. Plaintiff did not include any other language suggesting discrimination continued after termination. A reasonable EEOC investigation of this charge would not have expanded beyond the date Plaintiff listed (or beyond the date of Plaintiff's termination). Thus, the Court finds that Plaintiff failed to exhaust his administrative remedies as required.[4]

Alternatively, Plaintiff did not plead facts sufficient to establish the elements of retaliation. To establish a case of retaliation, a plaintiff must show that (1) they engaged in a protected activity; (2) they suffered an adverse employment action; and (3) there was a causal link between their protected activity and the adverse employment action. *Raad v. Fairbanks N. Star Borough Sch. Dist.*, 323 F.3d 1185, 1197 (9th Cir. 2003). In the retaliation context, an adverse employment action is an action that is "reasonably likely to deter employees from engaging in protected activity." *Vasquez v. Cnty. of Los Angeles*, 349 F.3d 634, 646 (9th Cir. 2003), as amended (Jan. 2, 2004). The causation element requires proof of a causal link between a protected activity and the employer's action. *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2533 (2013).

Here, there is no "adverse employment action" alleged. BoA closed Plaintiff's financial accounts after Plaintiff was already on leave *and* after he was terminated. A

---

[3] Plaintiff attached a copy of his EEOC charge to his original complaint. After amendment, the Court treats the original complaint as nonexistent. *Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992). However, Plaintiff did not attach a copy of the charge to the TAC. Moreover, the parties do not dispute that the EEOC charge attached to the original complaint is a true and correct copy. Thus, even though Plaintiff did not technically attach the charge to his TAC, the Court will consider it by deeming it to be incorporated by reference into the TAC.

[4] And, as Defendants point out, "if he [Plaintiff] filed an EEOC charge on [this claim] now, that charge would, itself, be untimely, since the alleged acts occurred more than 300 days ago, and indeed more than two years ago." (Doc. 76 p. 5).

lawsuit for $30,000 of credit card debt after the end of an employee's tenure is not "reasonably likely to deter employees from engaging in protected activity." Even if it was "adverse employment action," Plaintiff failed to show a causal link. He has not alleged that BoA sued for his credit card debt *because of* his complaints. He did not "link" his complaints to BoA's action. After reviewing this cause of action, the Court concludes that Plaintiff did not exhaust his administrative remedies as required for the claim and, in the alternative, Plaintiff did not allege sufficient facts to state a claim for retaliation. The Court will not grant leave to amend because further amendment of this theory of retaliation would be futile for the reasons discussed above (*see supra* Section III.a(i)(2)) and, alternatively, it would be futile because Plaintiff cannot cure the lack of exhaustion.

### iii.   Claim 3: Discrimination (disability)

Plaintiff's third claim alleges "Discrimination based on Disability."

#### 1.   Timeliness

Somewhere between 2019 and 2022, "Plaintiff began managerial disability accommodations," including access to the health room. (Doc. 65 p. 5). Plaintiff says he was diagnosed with Parkinson's disease. (Doc. 65 p. 5). The "managerial disability accommodations" were allegedly removed around January 2021, which caused Plaintiff to feel "humiliated" and "forced him to go on leave" in March 2021. (Doc. 65 p. 8). Plaintiff alleges that BoA "did not assist him at his request for alleviating his disability by removing him from client facing roles." (Doc. 65 p. 7). Plaintiff also alleges two specific incidents: the first in 2019 when a manager "screamed at him to come back [from the restroom] to take calls," the second in 2020 when an individual forced him to stay late, instant messaged him past his scheduled work time, and made him late to pick up his children from school. (Doc. 65 p. 5-7).

All these allegations occurred while Plaintiff was still working, prior to when he began his leave of absence in March 2021. In other words, all of these allegations took place before October 5, 2021, and all are time-barred. The Court will consider the remaining paragraphs listed in support of this claim.

### 2. Merits

The ADA makes it unlawful to "discriminate against a qualified individual with a disability because of the disability of such individual in regard to . . . terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). To plead discrimination under the ADA, a plaintiff must demonstrate that they: (1) are a qualified individual with a disability; (2) can perform the essential functions of their job; and (3) suffered an adverse employment action because of, or "but for,"[5] their disability. *Kennedy v. Applause, Inc.*, 90 F .3d 1477, 1481 (9th Cir. 1996); *see also Nunes v. Wal-Mart Stores, Inc.*, 164 F.3d 1243, 1246 (9th Cir. 1999). "An adverse employment action is one that materially alters the 'terms and conditions' of the plaintiff's employment." *Mamola v. Group Mfg. Servs.*, No. CV-08-1687-PHX-GMS, 2010 WL 1433491, at *6 (D. Ariz. Apr. 9, 2010) (citing *Kang v. U. Lim. Am., Inc.*, 296 F.3d 810, 819 (9th Cir. 2002)).

Plaintiff has sufficiently pled facts to meet the first two elements. Plaintiff alleges that he "began managerial disability accommodations," including receiving access to the health room in "2019-2022." (Doc. 65 p. 5). In "2021-2022" Plaintiff alleges his "symptoms of speech difficulty, anxiety and digestion problems" were such that he required breaks. (Doc. 65 p. 5). Plaintiff then says "Parkinson[']s disease was eventually diagnosed." (Doc. 65 p. 5). Plaintiff also alleges that on March 29, 2024, "Social Security Disability formally approved [his] disability status to March 9 2021." (Doc. 65 p. 13).

The question becomes whether Plaintiff has alleged sufficient facts to meet the third element. Plaintiff presents two adverse employment actions: the failure to promote and termination. However, any failure to promote happened prior to Plaintiff going on leave and is therefore time-barred. Regarding termination, Plaintiff fails to allege facts that show he "suffered" termination *because of* (or "but for") his disability. In fact, Plaintiff provides

---

[5] Here, "because of" is read to require "but for" rather than "proximate" causation. *See UMG Recordings, Inc. v. Shalter Capital Partners LLC*, 718 F.3d 1006, 1017 n. 7 (9th Cir. 2013) (*citing New Directions Treatment Servs. v. City of Reading*, 490 F.3d 293, 301 n. 4 (3d Cir. 2007).

an explanation for his termination, writing that BoA stated he "was on unapproved leave and fired him." (Doc. 65 p. 10).

In conclusion, after reviewing this cause of action, the Court concludes that the facts alleged are insufficient to state a claim for discrimination under the ADA. The Court will not grant leave to amend because further amendment of this theory of discrimination would be futile for the reasons discussed above. *See supra* Section III.a(i)(2).

### iv.   Claim 4: Discrimination (religion)

Plaintiff's fourth cause of action alleges "Discrimination based on Religion."

### 1.   Timeliness

Plaintiff alleges he "was discriminated based on religion on several occasions" between 2019 and 2022. (Doc. 65 p. 3, 6). Generally, Plaintiff alleges that BoA "only gave mobility to certain . . . religions." (Doc. 65 p. 4). Specifically, Plaintiff details an incident in which he asked his manager why he was not promoted and asked for help to be promoted. (Doc. 65 p. 6). Plaintiff's manager allegedly responded "saying that she knew of plaintiff's religion and disagrees strongly with it and that they do not see eye to eye." (Doc. 65 p. 6). The manager "stated this for several months." (Doc. 65 p. 6).  Plaintiff then alleges that BoA "management team made it clear he religiously did not fit in" and that was why he was not promoted. (Doc. 65 p. 6). Management "continued to deny him promotion for the duration of his career" and upper management "supported the discrimination." (Doc. 65 p. 4). Plaintiff also describes another incident from 2020 where an individual allegedly forced Plaintiff to stay late, instant messaged him past his scheduled work time, and made him late to pick up his kids from school. (Doc. 65 p. 7).

Each of these alleged incidents occurred *prior to Plaintiff going on leave.* The timing is undisputed and all acts occurred prior to October 5, 2021.  After reviewing this cause of action, the Court concludes that the facts alleged are time-barred and therefore insufficient to state a claim for discrimination based on religion. The Court will not grant leave to amend because further amendment of this theory of discrimination would be futile

for the reasons discussed above (*see supra* Section III.a(i)(2)) and, alternatively, it would be futile because of the time bar.

### v. Claim 5: Discrimination (age, gender)

Plaintiff's fifth cause of action alleges "Discrimination based on age and gender."

#### 1. Timeliness

The incidents that Plaintiff alleges in support of this claim include the following:

- Plaintiff found that job mobility claims "only rang true for . . . women and younger generations" but not for "plaintiff in disfavored classes of being too old over 40, religious beliefs, and male;" the BoA's hiring webpage "emphasize(s) woman management" and "show[s] women hiring a woman over another man and favoring women in promotions, selection, and job progression;" management provided job mobility only "to their favored classes" (Doc. 65 p. 3).
- Female colleagues "stated that when hiring comes down to two candidate's male and female the practice by [BoA] is to promote the female;" a female colleague told Plaintiff that in his division, BoA "hired and promoted based on diversity requirements which focused more on women;" BoA "only gave mobility to certain genders and ages" (Doc. 65 p. 3-4).
- A female colleague got a promotion over Plaintiff "who had all the required securities licenses needed while she had none;" Plaintiff trained a female colleague who "was then promoted over plaintiff" (Doc. 65 p. 4).
- "Plaintiff notified management of unfair hiring and promotion practiced by managers;" "Plaintiff complained of this unequal treatment of being male over 40 denied promotions;" "Senior managers discussed often diversity equity inclusion (DEI) honored groups and continually acted on those discussions by hiring younger DEI approved new employees" (Doc. 65 p. 4-5).
- Plaintiff attempted to seek a managerial mentor but received no response; "from 2016 – 2020 Plaintiff sought a QA role under a specific manager and interviewed 3 times but was passed up by younger females promoted instead" (Doc. 65 p. 5).
- Plaintiff met with management to discuss complaints of discrimination (Doc. 65 p. 7-8).

The Court understands that Plaintiff is alleging age and gender discrimination over a period of time. However, the period of time detailed above is *entirely* time-barred; each of these events took place *prior to when Plaintiff went on leave*. Although, as discussed above, acts occurring outside the 300-day window may be permitted if they are part of an "ongoing harassment" or "hostile work environment" claim, the Plaintiff is still required

- 14 -

to have submitted his charge within 300 days of conduct that is part of an ongoing pattern of discrimination in order for earlier incidents to be considered. <u>None of the above incidents of alleged discrimination took place within 300 days of when Plaintiff filed his charge</u>. Plaintiff does not allege any age or gender discrimination after October 5, 2021. Moreover, a "failure to promote" is an "easy to identify" discrete discriminatory act that cannot form the basis of an ongoing "hostile environment" claim.

The timing is undisputed and all acts occurred prior to Plaintiff's leave-of-absence. After reviewing this cause of action, the Court concludes that the facts alleged are insufficient to state a claim for discrimination on the basis of age or gender. The Court will not grant leave to amend because further amendment of this theory of discrimination would be futile for the reasons discussed above (*see supra* Section III.a(i)(2)) and, alternatively, it would be futile because all of these acts are time barred.

### vi.  Claim 6: Unfair hiring and promotion practices

Plaintiff's sixth cause of action alleges "Unfair hiring and promotion practices based on age, disability, gender, and religious discrimination." The Court has already described why Plaintiff's claims for discrimination based on age, disability, gender, and religion are insufficient. The only difference in this claim appears to be that Plaintiff narrows in on the adverse employment action of "unfair hiring and promotion practices." However, any allegedly unfair *hiring* or *promotion* practice must have occurred prior to Plaintiff going on leave in March 2021 and is therefore time-barred. Moreover, a "failure to promote" is an "easy to identify" discrete discriminatory act that cannot form the basis of a "hostile work environment" claim.

After reviewing this cause of action, the Court concludes that the facts alleged are insufficient to state a claim. The Court will not grant leave to amend because further amendment of this theory would be futile for the reasons discussed above (*see supra* Section III.a(i)(2)) and, alternatively, it would be futile because of the time bar.

### vii.   Claim 7: Employment term violations

Plaintiff's seventh[6] cause of action alleges "Employment term violations, hiring website specifically advertises stating great place to work with hiring and promoting with job mobility which job mobility they denied plaintiff 6 years." Plaintiff alleges the BoA website "advertised job mobility (movement within company)" but such job mobility in practice was only for "favored certain classes." (P. 2).

This claim lacks a cognizable legal theory. Website content, by itself, does not form a contract, or a term of a contract. *See, e.g.*, *Doe v. Regents of Univ. of California*, 672 F. Supp. 3d 813, 821 (N.D. Cal. 2023) (finding documents available on a public website were insufficient to form an express contract). To establish a contract via a website, a user must show that contractual terms were presented "in a manner that made it apparent the [user] was assenting to those very terms when checking a box or clicking a button." *Sellers v. JustAnswer LLC*, 73 Cal. App. 5th 444, 461 (2021).

Similarly, online advertising does not establish an offer to enter a contract. *Roley v. Google LLC*, 40 F.4th 903, 909 (9th Cir. 2022) (finding "[a]dvertisements are not typically understood as offers" in the context of online advertising). Rather, "advertisements are understood to be mere requests to consider and examine and negotiate; and no one can reasonably regard them as otherwise *unless* the circumstances are exceptional and the words used are very plain and clear." *Leonard v. Pepsico, Inc.*, 88 F. Supp. 2d 116, 123 (S.D.N.Y. 1999) (emphasis added).

Here, Plaintiff has not pled facts that suggest that the "job mobility" on the website was anything more than website content. He does not say he assented to any sort of contractual terms regarding job mobility via the website. He also describes BoA's website as "*advertis[ing]* job mobility." Online advertisement of job mobility, without exceptional circumstances, does not establish an offer to enter into an employment contract that includes the advertised job mobility as a term of the contract.

---

[6] Plaintiff misnumbered two claims as "Claim 7." This section refers to the first Claim 7.

After reviewing this cause of action, the Court concludes that the facts alleged are insufficient to state a claim. Alternatively, even if this claim had a cognizable legal theory, it is time-barred: Plaintiff was hired in May 2015 and went on leave in March 2021. Any claim regarding hiring, job mobility, or promotion must have occurred prior to Plaintiff going on a leave of absence. The Court will not grant leave to amend because further amendment of this theory would be futile for the reasons discussed above (*see supra* Section III.a(i)(2)) and, alternatively, it would be futile because this is not a cognizable legal theory and the acts are time barred.

### b.  Plaintiff's Claims 7-12 against Defendants MetLife and Sedgwick

Plaintiff alleges three claims against Defendant MetLife: Claim 7[7] ("Negligence and Omission"), Claim 8 ("Wrongful denial of leave benefits short and long-term), and Claim 9 ("Failure to consider evidence of limitations claimant submitted"). He also alleges three claims against Defendant Sedgwick: Claim 10 ("Negligence and Omission"), Claim 11 ("Failure to consider evidence of limitations claimant submitted"), and Claim 12 ("Improper denial of benefits under the Employee Retirement Income Security Act of 1974").

As discussed above, a Court usually cannot consider anything outside the complaint without transforming the motion to dismiss into a motion for summary judgment under Federal Rule of Civil Procedure 56. There are two recognized exceptions, however, in which a court may consider evidence otherwise outside of the complaint without converting the motion: (1) evidence that the court has judicially noticed, and (2) evidence incorporated, either literally or by reference, into the plaintiff's complaint. *Lee v. City of L.A.*, 250 F.3d 668, 688-89 (9th Cir. 2001).

Here, Plaintiff's complaint repeatedly references the specifics of his benefit plans. In doing so, he incorporated by reference the disability benefit plan documents attached to the Defendants' response. Thus, the Court will consider the Summary Plan Description

---

[7] Plaintiff misnumbered two claims as "Claim 7." This section refers to the second Claim 7.

("SPD") and the Summary of Material Modifications ("SMM") in analyzing these claims.

### i.   ERISA Applicability

Plaintiff generally invokes the Employee Retirement Income Security Act of 1974 ("ERISA") as support for some claims and specifically invokes ERISA in claiming Sedgwick violated ERISA when it denied him *short-term* disability benefits. Defendants concede that ERISA governs BoA's *long-term* disability benefits plan. (Doc. 77 p. 10). Thus, the issue before the Court is whether ERISA covers BoA's *short-term* disability benefit plans.

To determine whether a benefit plan is an ERISA plan, a court must first consider whether the plan fits the definition of an "employee welfare benefit plan." An "employee welfare benefit plan" is:

> [A]ny plan, fund, or program . . . established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, . . . benefits in the event of . . . sickness, accident, [or] disability . . .

29 U.S.C. § 1002(1). However, there is a regulatory exemption that exempts certain "payroll practices" from ERISA-coverage. Under the exemption, "employee welfare benefit plans" do not include "[p]ayment of an employee's *normal compensation,* out of the *employer's general assets,* on account of periods of time during which the employee is physically or mentally unable to perform his or her duties, or is otherwise absent for medical reasons . . ." 29 C.F.R. § 2510.3–1(b)(2) (emphasis added). Courts focus on "the actual methods of payment" and the source from which the benefits are paid in determining whether something qualifies as a "payroll practice." *Alaska Airlines, Inc. v. Oregon Bureau of Lab.*, 122 F.3d 812, 814 (9th Cir. 1997).

In *Behjou v. Bank of Am. Grp. Benefits Program*, the court found that "short-term disability benefits paid by Bank of America contain[ed] the requisite indicia of 'normal compensation'" in the following scenario:

> The Plan documents state[d] that 'STD replaces income' based on the employee's base pay, or a specific formula if the employee is paid on a commission basis. . . . Disability payments [were] made 'through the regular payroll process' with deductions taken for tax withholding, insurance coverage, 401(k) contributions, and [were] considered taxable income . . . Benefits terminate[d] after twenty-six weeks or, inter alia, 'when employment ends.'

No. C 10-03982 SBA, 2012 WL 1534931, at *3 (N.D. Cal. May 1, 2012). That court went on to find that "uncontroverted evidence show[ed] that the payment of short-term disability benefits [was] made from Bank of America's general assets" and concluded that the payment was a "payroll practice" exempted under ERISA.

Here, Defendants MetLife and Sedgwick argue that the payment of short-term disability benefits is a "payroll practice" because it is "normal compensation." The Court agrees. The short-term disability benefits plan here is nearly identical to that in *Behjou*. The SMM states that "[short-term disability] benefits replace income" based on the employee's "weekly base pay." (Doc. 77-2 p. 4, 6). Disability payments are subject to deductions for insurance coverage, 401(k) contributions, and tax withholdings and garnishments. (Doc. 77-2 p. 6). The benefits "are considered taxable income" and they terminate after twenty-six weeks or "when employment ends." (Doc. 77-2 p. 6). Finally, the payment of short-term disability benefits is from BoA's "general assets" ("Contributions and funding . . . [n]ot insured; company pays cost"). (Doc. 77-1 p. 20).

It is true that the SPD says that the Group Benefits Program "is subject to *applicable* limitations and restrictions under . . . ERISA." (Doc. 77-1 p. 4). However, as described above, there is no "applicable" limitation or restriction for BoA's short-term disability plan because it is an exempt "payroll practice." *See also Alaska Airlines, Inc.*, 122 F.3d at 813-14 (finding employer characterization of plan as falling under ERISA not controlling); *Jamison v. Life Ins. Co. of N. Am.*, No. 3:21-CV-00039-YY, 2022 WL 1913778 (D. Or. May 4, 2022), *report and recommendation adopted*, No. 3:21-CV-00039-YY, 2022 WL 1910260 *6 (D. Or. June 2, 2022) (finding not dispositive "plan documents describing short-term disability plan as subject to ERISA").

The Court finds that Plaintiff has not established that ERISA covers BoA's *short-term* disability benefit plan. As such, Claim 12 for "improper denial of benefits" under ERISA is dismissed and claims 8, 9, and 11, are also dismissed to the extent they are claims under ERISA for short-term disability benefits.

### ii.  ERISA Preemption

Defendants argue that some of Plaintiff's claims are preempted by ERISA. As established above, ERISA does not apply to BoA's short-term disability plan but does apply to BoA's long-term disability plan. The issue is whether any of Plaintiff's claims regarding long-term disability are preempted under ERISA.

ERISA derives its preemptive power from two components. *Blue Cross of Cal. v. Insys Therapeutics*, 390 F. Supp. 3d 996, 1003 (D. Ariz. 2019). The first component, ERISA section 514(a), preempts all state laws "as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1444 (a). The second component, ERISA section 502(a), outlines the scope of civil remedies available to enforce any part of ERISA's provisions. *Id.* (citing *Cleghorn v. Blue Shield of Cal.*, 408 F.3d 1222, 1225 (9th Cir. 2005). If a state cause of action falls within this scope, the Court deems the cause of action preempted as conflicting with the intended exclusivity of ERISA's civil remedies. *Id.* This is the case even if the state cause of action is not preempted by section 514(a). *Id.*

The Supreme Court has determined that state common law causes of action, including breach of contract and tort, "relate to" an employee benefit plan and therefore fall under ERISA's express preemption clause, section 514(a). *See Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 43, 53 (1987) ("The common law causes of action raised in Dedeaux's complaint [including contract and tort actions], each based on alleged improper processing of a claim for benefits under an employee benefit plan, undoubtedly meet the criteria for pre-emption under § 514(a)."). Courts in this district and the state of Arizona have followed this precedent. *See, e.g.*, *Schaum v. Honeywell Retiree Med. Plan No 507*, No. CV-04-2290-PHX-MHM, 2006 WL 2496435, *20 (D. Ariz. Mar. 31, 2006) (finding medical provider's claims, including breach of contract, preempted under ERISA); *Satterly*

*v. Life Care Centers of America, Inc.*, 204 Ariz. 174, 178 (Ariz. Ct. App. 2003) ("[W]here a common law breach of contract claim arises from the administration of an ERISA plan, it is preempted"); *Russell v. CVS Rx Servs. Inc.*, No. CV-16-00284-PHX-PGR, 2016 WL 9343117 *2 (D. Ariz. May 16, 2016) (finding state law claim for negligence relating to administration of an ERISA plan "accordingly preempted").

MetLife and Sedgwick contend that Plaintiff's claims for negligence and breach of contract for *long-term* disability benefits are preempted by ERISA. Based on the extensive case law finding the same, the Court agrees. Because Plaintiff's claims for negligence and breach of contract are preempted, the Court will analyze whether Plaintiff has sufficiently stated a cause of action under ERISA itself (rather than under state tort and contract law).

### iii.   Claims for "Negligence and Omission"

#### 1.   Against MetLife (Claim 7)

##### i.   Short-Term Disability Benefits

ERISA does not cover the short-term disability benefits plan and Plaintiff's negligence claim is not preempted. To sufficiently plead a case of negligence, a "[p]laintiff must show the existence of a duty, breach of that duty, causation, and damages." *Cloud v. Pfizer Inc.*, 198 F. Supp. 2d 1118, 1138 (D. Ariz. 2001). "[W]hether a duty exists[] is a matter of law for the court to decide." *Gipson v. Kasey*, 150 P.3d 228, 230 (Ariz. 2007). "[A]bsent some duty, an action for negligence cannot be maintained." *Id.* In deciding whether a duty exists, courts consider the relationship between the parties and public policy. *Id.* at 231. A duty may exist if there is a "special relationship[] based on contract, family relations, or conduct undertaken by the defendant." *Id.* at 232. Generally, administration of an employer-paid short-term disability benefit plan does not create a duty. *See generally Wilkes v. Electronic Data Sys. Corp.*, No. 04-341 TUC JMR, 2006 US Dis Lexis 11839, 2006 WL 753161 (finding no contract existed between Plaintiff and MetLife where MetLife was third party administrator for employer).

MetLife did not owe Plaintiff a duty of care. While Plaintiff claims that MetLife "owed a duty of care to assist plaintiff to receive paid benefits," the Court finds no special

relationship between the parties and no public policy in support of a duty. MetLife is the claims administrator of the short-term disability plan funded by BoA. (Doc. 77-2 p. 4). Plaintiff did not have a contractual relationship with MetLife; rather, MetLife had a contractual relationship with BoA for the administration of benefits. The SPD explicitly states that "[t]he provisions of [the] summary do not establish enforceable employee rights, *contractual* or otherwise." (Doc. 77-1 p. 4) (emphasis added).

In conclusion, Plaintiff has not pled sufficient facts to meet the elements of negligence.

### ii.   Long-Term Disability Benefits

Having established that Plaintiff's long-term disability benefits are covered by ERISA, and that Plaintiff's negligence claim is preempted, Plaintiff can only state a cause of action for long-term disability under ERISA. To claim a denial of benefits under ERISA, a plaintiff "must avail himself or herself of a plan's own internal review procedures before bringing suit in federal court." *Diaz v. United Agric. Employee Welfare Benefit Plan & Trust*, 50 F.3d 1478, 1483 (9th Cir.1995). "[T]he federal courts have the authority to enforce the exhaustion requirement in suits under ERISA, and … as a matter of sound policy they should usually do so." *Amato v. Bernard*, 618 F.2d 559, 568 (9th Cir. 1980).[8]

Here, BoA's plan clearly had "internal review procedures" that Plaintiff was required to follow prior to bringing this lawsuit. The SPD lists actions that an employee "must take as soon as it's clear that a disability absence will last more than 180 calendar days." (Doc. 77-1 p. 16). The second step is "initiate a claim" by contacting "the LTD [long-term disability] Claims Administrator." (Doc. 77-1 p. 16). "The deadline for filing a claim for [long-term] benefits is 90 days after the end of the 180-day elimination period." (Doc. 77-1 p. 17).   Plaintiff does not allege that he ever initiated a claim for long-term

---

[8] The "exhaustion requirement applies only if the relevant plan requires exhaustion." *Greiff v. Life Ins. Co. of N. Am.*, 386 F. Supp. 3d 1111, 1113 (D. Ariz. 2019). Here, the relevant plan requires exhaustion: "You can bring a civil action against a component plan for benefits, but only after you've *exhausted* your administrative review rights under that plan." (Doc. 77-1 p. 22) (emphasis added).

disability benefits. Plaintiff says he was terminated so that BoA could "avoid[] helping him file for LTD [long-term disability]." (Doc. 65 p. 12). It is unclear how MetLife was negligent regarding long-term benefits if MetLife did not receive a claim for long-term disability benefits. Furthermore, Plaintiff clearly did not exhaust the plan's internal review procedures if he did not initiate a claim.

### iii.   Conclusion: MetLife (Claim 7)

After reviewing this cause of action, the Court concludes that the facts alleged are (1) insufficient to state a claim for negligence and (2) insufficient to state a claim under ERISA. The Court will not grant leave to amend because further amendment of this theory of negligence and omission would be futile for the reasons discussed above (*see supra* Section III.a(i)(2)).

### 2.   Against Sedgwick (Claim 10)

Sedgwick replaced MetLife as BoA's claim administrator for short-term disability claims only. *See supra* Section I. The analysis here is thus the same as the analysis above for MetLife's short-term disability benefit plan: Sedgwick did not owe Plaintiff a duty of care because there was no contractual relationship between Plaintiff and Sedgwick. *See supra* Section III.b(iii)(1)(i). Sedgwick took over as the claim administrator of the short-term disability plan funded by BoA. Just as Plaintiff did not have a contractual relationship with MetLife for short-term disability, Plaintiff does not have a contractual relationship with Sedgwick for short-term disability. Rather, Sedgwick has a contractual relationship with BoA. Finally, the SPD explicitly states that "[t]he provisions of [the] summary do not establish enforceable employee rights, contractual or otherwise." (Doc. 77-1 p. 4). Because Plaintiff has not pled sufficient facts to establish the elements of negligence, this claim is dismissed.

### iv.   Against MetLife (Claim 8)

Plaintiff's eighth cause of action is against MetLife for "Wrongful denial of leave benefits short and long-term." Plaintiff appears to be alleging a breach of contract claim, alleging that MetLife breached a contract when it denied Plaintiff benefits that "Plaintiff

was contractually entitled to." The Court will analyze the claim as such.

### 1. Short-Term Disability Benefits

This claim is not preempted by ERISA because, as established above, the short-term disability benefit plan is exempt from ERISA.

Under Arizona law, the elements of a breach of contract claim are: "(1) the existence of a contract; (2) breach; and (3) resulting damages." *First Am. Title Ins. Co. v. Johnson Bank*, 372 P.3d 292, 297 (Ariz. 2016).

Plaintiff fails to plead facts to meet the first element. As discussed above, MetLife is the claim administrator of the short-term disability plan funded by BoA. (Doc. 77-2 p. 4). The only contract is between MetLife and BoA (*not* MetLife and Plaintiff). In fact, the SPD explicitly states that "[t]he provisions of [the] summary do not establish enforceable employee rights, contractual or otherwise." (Doc. 77-1 p. 4).

### 2. Long-Term Disability Benefits

ERISA preempts Plaintiff's breach of contract claim with respect to long-term disability benefits. *See supra* Section III.b(ii). Plaintiff does not have a claim under ERISA because he failed to avail himself of the plan's own internal review procedures before bringing suit. *See supra* Section III.b(iii)(1)(ii).

### 3. Conclusion (Claim 8)

After reviewing this cause of action, the Court concludes that the facts alleged are (1) insufficient to state a claim for breach of contract and (2) insufficient to state a claim under ERISA. The Court will not grant leave to amend because further amendment of this theory of negligence and omission would be futile for the reasons discussed above (*see supra* Section III.a(i)(2)).

### v. Against MetLife and Sedgwick: Claims 9 and 11 for "Failure to Consider Evidence of Limitations Claimant Submitted"

Plaintiff again appears to allege a breach of contract claim, arguing that MetLife, and subsequently Sedgwick, breached a contract when they allegedly "fail[ed] to consider evidence of limitations claimant submitted." The Court will analyze the claims as such.

### 1.  Against MetLife (Claim 9)

#### i.  Short-Term Disability Benefits

This claim is not preempted by ERISA because, as established above, the short-term disability benefit plan is exempt from ERISA. *See supra* Section III.b(i). However, as discussed above, there can be no breach of contract claim between Plaintiff and MetLife because there is no contract; the only contract is between MetLife and BoA (*not* MetLife and Plaintiff). *See supra* Section III.b(iii)(1)(i).

#### ii.  Long-Term Disability Benefits

ERISA preempts Plaintiff's breach of contract claim with respect to long-term disability benefits. *See supra* Section III.b(ii). Plaintiff does not have a claim under ERISA because he failed to avail himself of the plan's own internal review procedures before bringing suit. *See supra* Section III.b(iii)(1)(ii).

#### iii.  Conclusion (Claim 9)

After reviewing this cause of action, the Court concludes that the facts alleged are (1) insufficient to state a claim for breach of contract and (2) insufficient to state a claim under ERISA. The Court will not grant leave to amend because further amendment of this theory would be futile for the reasons discussed above. *See supra* Section III.a(i)(2).

### 2.  Against Sedgwick (Claim 11)

This claim is not preempted by ERISA because, as established above, the short-term disability benefit plan is exempt from ERISA. However, the legal basis for this claim is unclear. Plaintiff alleges a "failure to consider evidence of limitations claimant submitted," but then writes that Sedgwick denied his appeal "due to no additional supporting documentation being submitted." (Doc. 65 p. 12). Regardless, as discussed above, there can be no breach of contract claim between Plaintiff and Sedgwick because the only contract is between Sedgwick and BoA (*not* Sedgwick and Plaintiff). *See supra* Section III.b(iii)(1)(i). After reviewing this cause of action, the Court concludes that the facts alleged are insufficient to state a claim for breach of contract. The Court will not grant leave to amend because further amendment of this theory would be futile for the reasons

discussed above. *See supra* Section III.a(i)(2).

**IV.    CONCLUSION**

Accordingly,

**IT IS ORDERED** that Defendant Bank of America's Motion to Dismiss (Doc. 76) is **GRANTED.**

**IT IS ORDERED** that Defendants Metropolitan Life Insurance Co. and Sedgwick Claims Management Services, Inc. Motion to Dismiss (Doc. 77). is **GRANTED.**

**IT IS FINALLY ORDERED** that the Clerk of the Court shall enter judgment in favor of Defendants and against Plaintiff. The motions for attorneys' fees (Docs. 73 & 74) remain pending.

Dated this 12th day of September, 2024.

James A. Teilborg
Senior United States District Judge